We'll proceed with the argument in calendar in the order that they're listed, starting with the first case, which is the Mbanwei v. Garland. Yes, good morning. May it please the court, Alexandra Perloff-Giles from Gibson, Dunn and Crutcher on behalf of the petitioner Derick Furwood Mbanwei. I'd like to reserve two minutes for rebuttal. All right. Mr. Mbanwei is a 29-year-old Cameroonian man who was forced to flee his home country after he found himself the target of persecution and threats from militant Anglophone separatists on the one hand and from Francophone government forces on the other hand. It bears emphasizing at the outset that the immigration judge found Mr. Mbanwei credible and indeed the government attorney agreed. So this is a case that comes before this court on a record that must be accepted as true. The key question at issue is one that this court reviews de novo. Taking all of petitioner's testimony as true, does the record evidence establish that Mr. Mbanwei is statutorily eligible for asylum? It does and the IJ's decision to the contrary rests on a number of legal errors. So properly considering all of the record evidence and applying the proper standards, we believe that Mr. Mbanwei is entitled to asylum as a matter of law. I'd like to touch on five of those errors briefly here. First with respect to past persecution, the IJ required a showing of physical harm. The IJ stated that quote various forms of physical violence have been found to constitute persecution, but did not acknowledge that established precedent, physical harm is not required. Detention and confinement, specific and credible death threats, psychological harm, and even substantial economic deprivation have been found to constitute persecution. So Mr. Mbanwei's testimony establishes the very kinds of harm that this court has recognized constitute persecution, both with respect to the specific death threats he received from the armed separatists who arrived at his home, targeted him specifically, they identified him by name, they called him Derek, and they fired warning shots. And Mr. Mbanwei understood that these were not empty threats, the separatists have been known to kill those they label black legs or craters, whether decapitating them with a machete or with a home or burning them with a home lighter as he testified. He also testified about the detention, the abysmal, unsanitary conditions of the detention, where he was held without any charges until he was able to bribe his way out, unfortunately. So both of those constitute persecution under this court's precedence, and certainly the IJ's holding that physical violence was required for persecution is clear legal error. Second, with respect to future persecution, the IJ did not address Mr. Mbanwei's fear of future persecution at the hands of the separatists. Counsel, may I ask you a threshold question about that claim? Because I think on the merits, you have a strong argument that the IJ may have erred in not saying, as I read the opinion, he really didn't, didn't grapple with the threat of future prosecution by the separatists. But my question is whether that claim was exhausted, because Mr. Mbanwei had, I guess it was different counsel before the board, but he had counsel before the board and filed a brief before the board. And the brief before the board raises various challenges to the IJ's decision, but as far as I could tell, does not mention the threat of future prosecution by the separatists. So why do we have jurisdiction to review that issue? Your Honor, I think at a high level that the brief preserved the issue that he's entitled to asylum on the basis that he has a well-founded fear of future persecution from both the armed separatists and the government forces. Well, I mean, I guess I agree with you, but I think I think the phrase at a high level is doing a lot of work in that statement. I think the relevant point, Your Honor, is that the evidence is all before this court to make that kind of assessment. The IJ's role was both in eliciting testimony because Mr. Mbanwei was pro se and that's cases like Zamorano v. Garland discussed the IJ's obligation to develop the credibility determination. And then with the record evidence before this court, I think it's appropriate for this court to determine whether he meets the statutory requirements for asylum, and that is whether he has a fear of future persecution that is objectively reasonable in light of the country conditions. Also, can I ask, was he pro se when he filed the notice of appeal from the IJ? Because it seems like it was, and then at some point he got and had an attorney to file the brief. So he was pro se before the immigration court, and he had tried to contact legal service organizations, and that was the reason that he initially requested delays in the hearing, and then ultimately wasn't able to secure counsel for the hearing and was successful in obtaining counsel. I'm not exactly sure when he secured that representation. I gather he had some difficulty communicating with his counsel below. As Judge Miller indicated, I was not involved until I was appointed by this court. But the IJ's sort of rested, or rather the government here is pointing to the IJ's boilerplate statement that it considered all the evidence, and we don't believe that that is other precedence to establish that the court gave reasoned consideration to the fear of future persecution. The third error I'd like to direct the court's attention to is the impossibly high burden that the IJ held Mr. Mbanwe to when the IJ looked for evidence in the record that, quote, everybody who is Anglophone is being persecuted or subjected to other harm. That's not the future persecution. Fourth, the IJ ignored and misstated record evidence. The IJ stated that the respondent has not been involved in protests or demonstrations, but there is no evidence in the record to support that, and to the contrary, Mr. Mbanwe stated that he is a peaceful protester. So he said during testimony that he was not involved in any formal groups or organizations, but his testimony that he is a peaceful protester must be taken as true, and the country conditions are replete with evidence that peaceful protesters are arrested and even killed. Fifth, the IJ also mischaracterized the record in concluding that Mr. Mbanwe has never even been imputed separatist involvement by the government. I think that statement is squarely contradicted by the statements that the military men made to Mr. Mbanwe when they suggested that he was mates with the separatists and asked questions like, who is your leader? How many are in your group? The your there clearly indicates that they understood him to be affiliated with a separatist group, and so there is the nexus to imputed political opinion there, and the government cites cases referring to random criminal acts or arbitrary violence, but I think those are entirely inapposite. For example, the government cites Gormley v. Ashcroft, which is a case that had his cell phone stolen on two occasions and another incident, and the court said that, quote, random isolated criminal acts perpetrated by anonymous thieves do not constitute persecution. Well, Mr. Mbanwe is not simply afraid of random criminal acts by anonymous thieves. He's afraid of being targeted and killed by the separatists who identified him as a young Anglophone man of fighting age who refused to take up arms for their cause, or being targeted and killed by the government forces who, again, identified him as a young Anglophone man of fighting age, in that case who they believed was part of a separatist group. I'm sorry to jump in. I know you wanted to save a little bit of time. I'm happy to answer any questions from the bench. So finally, in light of the country conditions that have only deteriorated further since Mr. Mbanwe testified, demonstrating that essentially half of those who are returned to Cameroon have been detained and the other half are in hiding, that's the reality that Mr. Mbanwe would confront were he forced to return, and I'll reserve the remainder of my time. Thank you very much. Let's hear from the government. Good morning, Your Honors. My name is Linda Do and I represent the respondent, the United States Attorney General. In this immigration case, Petitioner has not shown that the evidence in this record compels the conclusion that he is eligible for asylum, withholding of removal, and cat protection. Here, Petitioner's claim is based on two incidents that occurred in Cameroon by two separate actors. Petitioner indicated that he was a 30-minute search of his on an inspection, questioning, and two-day detention by Cameroon officials. I'm sorry to interrupt. Let me ask you a question. The BIA did not address his claim, a fear of persecution by the separatists. What are you relying on in order to ask this court not to remand for the IJ to analyze that in the first instance? Are you relying on exhaustion or something else? The board adopted and affirmed the IJ's decision, and the IJ's decision in denying asylum, withholding, and removal... I'm sorry. I'm having a hard time hearing you. The IJ's decision, Your Honors, the IJ specifically noted in her denial of asylum, withholding, and cat that Petitioner had no further contact with separatists after the single encounter in January of 2018. The immigration judge further noted that there was no nexus to a protected ground, and that goes to past persecution and future persecution. Without a nexus to a protected ground, Petitioner would simply be ineligible for asylum on that basis. Petitioner alleged that he had a fear based on his youth and strength. He believes that that's why separatists had sought to recruit him. This court has held that young men who oppose... Counsel, is that a reasonable argument? He left Cameroon shortly after the incident with the separatists and the government? Actually, Your Honors, according to the record, Petitioner indicated that he had the threat of harm in January of 2018, and did not depart his country until either June or August of 2018. He indicated that there was no further... Didn't he leave his hometown as soon as... very shortly after the incident with the separatists? The actual record is not really clear as to when he left. There's one part, I think he... or his hometown is around mid-February, which is two weeks after the officer in Batibo had been kidnapped. There's another part in one area, 149-150, that says that Petitioner indicated that it was after March 12th that he traveled from Batibo to Yawunda, and in his... Right, so it's about three to four weeks after the incident, right? Yes, and Petitioner indicated that the separatists went to his home, and they could have returned at any time. He did not indicate that they made any other further threats against him, they made any effort to further contact him. Petitioner further testified that his parents, brother and two sisters, had no problems prior to his departure from Cameroon. He hasn't shown that there's individualized... I mean, his family... he's a young man, that's why he was targeted, and that's why it makes...  Well, Petitioner also has a younger brother as well, and Petitioner defined youth as persons between 18 to 30. Again, you know, despite that claim, Petitioner hasn't shown that it constitutes a protected ground, you know, and the sense that he fears that he could be arbitrarily caught in a crossfire between two factions, again, there's no nexus to a protected ground. And where did the IJ... I mean, where did the IJ say that? This is record AR 71, 76, and 77. Okay, so I'm... I mean, so that's the narrative of what happened, and then on 77, we get to... the court will find that respondent did not establish a well-founded fear of future persecution. The court makes this decision based on the country conditions evidence, and then there follows a four-page discussion of country conditions evidence that sort of mentions the separatists in passing here and there, but I didn't see any analysis of the threat that the separatists would engage in the persecution. According to the IJ decision at 71, the respondent indicated that he actually does not know the motive as to why the separatists would target him. That goes to lack of nexus to a protected ground, your honors. Without any... he has no idea as to why he would be targeted. Accordingly, he has not established that nexus. And then we go to past and future persecution. Without a nexus to... under the INA, it requires a nexus to a protected ground. I'm sorry, what was that last part? The INA, to establish eligibility for asylum withholding removal requires a nexus to a protected ground. Petitioner has not established the nexus in this instance. The record does not compel the conclusion that he has. And again, you know, even with regards to, you know, future persecution by Cameroonian officials, you know, petitioners indicated there was no specific reason why Cameroonian officials would seek to target him, except for his belief that he was an Anglophone. And although, you know, opposing counsel claims that the government would perceive him to be a peaceful protester, that is not supported by the record evidence. Petitioner indicated in his declaration that he informed separatists that he refused to take up arms on their behalf, because he was a separatist. He specifically testified that he was not affiliated with any organization and that he was not politically active. And that's pages 155 and 156. Judge asked, were you involved in any group's organization or anything in Cameroon? And petitioner testified, no, your honor. The judge questioned, were you or did you have any political involvement in Cameroon? Again, Mr. Movanwe said, no, your honor. Accordingly, substantial evidence of the record supports the agency's determination. The petitioner has not shown that the record evidence in this case compels a disinclusion contrary to the agency's denial. Does the government have a view on the exhaustion question that I raised with your friend? Your honor, this is indeed a question whether Petitioner had adequately exhausted the claim. However, the defendant respectfully notes that, you know, the court did adopt the immigration judge's decision. In that regard, the immigration judge did address the claim. The immigration judge, in denying asylum with holding a cat, respectfully stated, Petitioner had no further contact with separatists after that single incident. The immigration judge noted that, you know, despite the threat that the separatists had issued against him, there was no further contact to his, you know, parent, sibling, or his sibling. Petitioner specifically testified in his hearing, you know, when questioned whether you were hurt or harmed. Petitioner specifically testified, no. Again, that's on pages 150, 162, and 187. Petitioner has repeatedly stated that he was not hurt or harmed. Accordingly, he has not shown that his experiences, albeit offensive, did not result in actual suffering or harm rising to the level of persecution. This court has held that persecution is an extreme concept that does not include all conduct that is offensive, unlawful, or constitutional. And as immigration noted, these were singular incidences by two separate actors. And Petitioner has not shown that it was sustained or severe. And that's in the legal addendum, as well as the immigration judge's decision. Petitioner's contention that he required physical harm is not supported by the record. The immigration judge exemplified different types of harm that may constitute persecution, but did not require it for such a finding. If there are any further questions, Your Honors? No, it doesn't appear that we have any further questions. Thank you very much for your argument. Thank you. The government requests that the court deny the petition for review and rest on its feet. Thank you. Thank you, Your Honors. With the remainder of my time, I'd like to make just three points in response to an argument by counsel for the government. First, counsel raised the issue of the protected ground and pointed to the record evidence that I noted where he testified that he was not part of any formal groups or organizations. But that does not mean that he did not attend protests or would not be seen as a peaceful protester. If I go tomorrow to a protest for peace in Ukraine, it does not make me affiliated with a formal political group or part of any organizations. And to the extent the court has questions about what the record stands for, the appropriate remedy is to remand. The case law from this court, from cases like Vecinos de Leon v. Gonzalez and Lands of the Ashcroft, indicates that remand for clarification is the appropriate remedy where it's not clear. Second, no further contact. I think that's, as Your Honors pointed out, an unfair point when he left just weeks after and he doesn't know if his family is dead or alive. And this was more than an interrogation, this was a persecution. I see my time has elapsed. We would request that this court vacate the decision and remand for the Attorney General to, in its discretion, find him. This court entered order indicating that he's statutorily eligible for asylum and remand for proceedings with the agency. All right, thank you very much, counsel. The matter is submitted.
judges: NGUYEN, MILLER, BUMATAY